Slip Op. 12-37

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TAMPA BAY FISHERIES, INC. and SINGLETON FISHERIES, INC., | |
| Plaintiffs, | Before: Gregory W. Carman, Judge<br>Timothy C. Stanceu, Judge<br>Leo M. Gordon, Judge |
| v. | |
| UNITED STATES OF AMERICA, UNITED STATES CUSTOMS AND BORDER PROTECTION, DAVID V. AGUILAR, (ACTING COMMISSIONER, UNITED STATES CUSTOMS AND BORDER PROTECTION), UNITED STATES INTERNATIONAL TRADE COMMISSION, AND DEANNA TANNER OKUN (CHAIRMAN, UNITED STATES INTERNATIONAL TRADE COMMISSION), | Court No. 08-00404 |
| Defendants. | |

**OPINION**

[Dismissing certain claims as untimely; dismissing certain claims for lack of standing; and dismissing the remaining claims for failure to state a claim upon which relief can be granted; dismissing the action.]

Dated: March 20, 2012

<u>John J. Kenkel</u>, <u>J. Kevin Horgan</u>, deKieffer & Horgan of Washington, DC for Plaintiffs Tampa Bay Fisheries, Inc. and Singleton Fisheries, Inc.

<u>Jessica R. Toplin</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendants United States and U.S. Customs and Border Protection. With her on the briefs were <u>Tony West</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, <u>Franklin E. White, Jr.</u>, Assistant Director, and <u>Courtney S. McNamara</u> and <u>David S. Silverbrand</u>, Trial Attorneys. Of Counsel on the briefs were <u>Andrew G. Jones</u> and <u>Joseph Barbato</u>, Office of Assistant Chief Counsel for U.S. Customs and Border Protection of Washington, DC.

James M. Lyons, General Counsel, Neal J. Reynolds, Assistant General Counsel for Litigation, and Patrick V. Gallagher, Jr., Attorney Advisor, Office of General Counsel, U.S. International Trade Commission, of Washington, DC for Defendant U.S. International Trade Commission.

Gordon, Judge: This case arose from the actions of two agencies, the U.S. International Trade Commission (the "ITC" or the "Commission") and U.S. Customs and Border Protection ("Customs"), that denied Plaintiffs, Tampa Bay Fisheries, Inc. ("Tampa Bay") and Singleton Fisheries, Inc. ("Singleton"), certain monetary benefits under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c (2000), repealed by Deficit Reduction Act of 2005, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007). The ITC did not include either Plaintiff on a list of parties potentially eligible for "affected domestic producer" ("ADP") status, which would have qualified Tampa Bay and Singleton for distributions of antidumping duties collected under antidumping duty orders on imports of certain frozen shrimp from Brazil, Thailand, India, People's Republic of China, Socialist Republic of Vietnam, and Ecuador. Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Brazil, 70 Fed. Reg. 5,143, 5,143-45 (Feb. 1, 2005); . . . from Thailand, id. at 5,145-47; . . . from India, id. at 5,147-49; . . . from People's Republic of China, id. at 5,149-52; . . . from Vietnam, id. at 5,152-56; . . . from Ecuador, id. at 5,156-58 ("Frozen Warmwater Shrimp Antidumping Duty Orders"). Because Plaintiffs were not on the ITC's list of potential ADPs, Customs made no CDSOA distributions to Tampa Bay or Singleton.

Plaintiffs claim that Defendants' actions are inconsistent with the CDSOA, not supported by substantial evidence, and otherwise not in accordance with law. Plaintiffs also bring facial and as-applied constitutional challenges to the CDSOA under the First Amendment and the equal protection and due process guarantees of the Fifth Amendment.

Before the court are motions under USCIT Rule 12(b)(5) to dismiss for failure to state a claim upon which relief can be granted, filed by the ITC (Def. U.S. Int'l Trade Comm'n's Mot. to Dismiss for Failure to State a Claim upon which Relief can be Granted, ECF No. 39 ("ITC's Mot.")) and Customs (Def. U.S. Customs & Border Protection's Mem. in Supp. of the Mot. to Dismiss for Failure to State a Claim, ECF No. 41 ("Customs' Mot.")). The court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (2006). See Furniture Brands Int'l, Inc. v. United States, 35 CIT __, __, 807 F. Supp. 2d 1301, 1307-10 (2011). For the reasons set forth below, we conclude that certain of Plaintiffs' claims must be dismissed as untimely, certain claims must be dismissed for failure to state a claim upon which relief can be granted, and certain claims must be dismissed for lack of standing. Therefore, the motions to dismiss will be granted and this action dismissed.

## I. Background

Following a 2003 petition filed by Ad Hoc Shrimp Trade Action Committee, Veraggi Shrimp Corporation, and Indian Ridge Shrimp Co., the U.S. Department of Commerce ("Commerce") initiated an antidumping investigation of certain frozen and canned warmwater shrimp from Brazil, Ecuador, India, the People's Republic of China, the Socialist Republic of Vietnam, and Thailand. Notice of Initiation of Antidumping

Duty Investigations: Certain Frozen and Canned Warmwater Shrimp From Brazil, Ecuador, India, Thailand, the People's Republic of China and the Socialist Republic of Vietnam, 69 Fed. Reg. 3,876 (Jan. 27, 2004); First Am. Compl. ("Am. Compl.") ¶¶ 23-24, ECF No. 36.   Contemporaneously, the ITC conducted an injury investigation. Certain Frozen and Canned Warmwater Shrimp and Prawns From Brazil, China, Ecuador, India, Thailand, and Vietnam; Institution of Antidumping Investigations and Scheduling of Prelim. Phase Investigations, 69 Fed. Reg. 1,301 (Jan. 8, 2004); Am. Compl. ¶ 23.  During its injury investigation, the ITC sent questionnaires to the domestic industry that ask domestic producers to, inter alia, identify their position regarding the petition by checking one of three boxes indicating either support, opposition, or no position.  Each Plaintiff filed responses but did not check the box indicating support for the petition on the questionnaire, and they explain that they may not have checked any of the three boxes.  Pls.' Mem. in Opp'n to the Mot. of the U.S. Int'l Trade Comm'n to Dismiss for Failure to State a Claim at 3, ECF No. 44 ("Pls.' Opp'n").

Following an affirmative injury determination on frozen shrimp by the ITC in January 2005, Commerce published its amended final determinations of sales at less than fair value and issued the antidumping duty orders covering the subject merchandise.  Certain Frozen or Canned Warmwater Shrimp and Prawns From Brazil, China, Ecuador, India, Thailand, and Vietnam, 70 Fed. Reg. 3,943 (Jan. 27, 2005) (ITC final inj. determ.); Frozen Warmwater Shrimp Antidumping Duty Orders; Am. Compl. ¶¶ 27-28.  Commerce since has revoked the antidumping duty order against Ecuador; however, the order remains in effect for the other countries.  Implementation of the Findings of the WTO Panel in United States Antidumping Measure on Shrimp from

Ecuador: Notice of Determination Under section 129 of the Uruguay Round Agreements
Act and Revocation of the Antidumping Duty Order on Frozen Warmwater Shrimp from
Ecuador, 71 Fed. Reg. 48,257 (Aug. 23, 2007); Am. Compl. ¶ 28.

Plaintiffs brought this action on November 14, 2008, contesting the denial of
CDSOA distributions to each Plaintiff for Fiscal Years 2006-2008.  Compl., ECF No. 5.
Shortly thereafter, the court stayed this action pending a final resolution of other
litigation raising the same or similar issues. Order (Dec. 29, 2008), ECF No. 15 (action
stayed "until final resolution of Pat Huval Restaurant & Oyster Bar, Inc. v. United States,
Consol. Ct. No. 06-0290, that is, when all appeals have been exhausted.").

Following the decision of the U.S. Court of Appeals for the Federal Circuit ("Court
of Appeals") in SKF USA Inc. v. United States, 556 F.3d 1337 (2009) ("SKF"), cert.
denied, 130 S. Ct. 3273 (2010),[1] which addressed questions also present in this action,
the court issued an order directing Plaintiffs to show cause why this action should not be
dismissed.  Order to Show Cause, Jan. 3, 2011, ECF No. 19.  After receiving Plaintiffs'
response, the court lifted the stay on this action for all purposes. Order Lifting Stay,
Feb. 9, 2011, ECF No. 22.   On March 18, 2011, Plaintiffs filed their Amended
Complaint.[2]  Am. Compl.  Defendants filed motions to dismiss for failure to state a claim

---

[1] SKF reversed the decision of the Court of International Trade in SKF USA Inc. v.
United States, 30 CIT 1433, 451 F. Supp. 2d 1355 (2006), which held the CDSOA
requirement that limited affected domestic producer status to interested parties in
support of the petition unconstitutional on Fifth Amendment equal protection grounds.
[2] The filing of the amendment as a matter of course was untimely under Rule 15(a).
USCIT R. 15(a) ("[A] party may amend its pleading once as a matter of course within:
(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading
is required, 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is
earlier.").                                                  (footnote continued)

upon which relief can be granted on May 2, 2011 (ITC's Mot.) and May 3, 2011 (Customs' Mot.).

## II.  Standard of Review

In deciding a USCIT Rule 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted, the court assumes all factual allegations to be true and draws all reasonable inferences in plaintiff's favor.  Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-84 & n.13 (Fed. Cir. 1993).

A plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  The basis of the court's determination is limited to the facts stated on the face of the complaint, documents appended to the complaint, and documents incorporated in the complaint by reference. See Asahi Seiko Co. v. United States, 33 CIT ___, ___, (2009), 2009 WL 3824745, at 4 (quoting Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).

---

The amendments would not have been untimely under Rule 15(a) as in effect prior to January 1, 2011, which rule allowed a party to amend its pleading once as a matter of course before being served with a responsive pleading.  Because the other parties to this action have addressed in their Rule 12(b)(5) motions the complaint in amended form, the court exercises its discretion under USCIT Rule 89 to accept Plaintiffs' First Amended Complaint.  USCIT R. 89 ("These rules and any amendments take effect at the time specified by the court.  They govern . . . proceedings after that date in a case then pending unless: (A) the court specifies otherwise . . . .").

### III. Discussion

In 2000, Congress amended the Tariff Act of 1930 to add section 754, the CDSOA, which provides distributions of assessed antidumping and countervailing duties to ADPs on a fiscal year basis.  19 U.S.C. § 1675c(d)(1).[3]  To be an ADP, a party must meet several criteria, including the requirement that it have been a petitioner, or interested party in support of a petition, with respect to which an antidumping duty or countervailing duty order was entered.  Id. § 1675c(b)(1).  The CDSOA directed the ITC to forward to Customs, within 60 days of the issuance of an antidumping or countervailing duty order, lists of persons potentially eligible for ADP status, i.e., "petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire response."  Id. § 1675c(d)(1).  In identifying the parties to be placed on the ITC's list, the ITC must consult with Commerce if either no injury determination was required or if the ITC's records "do not permit an identification of those in support of a petition."  Id.  Customs then publishes the lists of potential ADPs in the Federal Register annually, prior to each distribution.  Id. § 1675c(d)(2).  Customs distributes assessed duties to parties on the

---

[3] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as if [the CDSOA] . . . had not been repealed . . . ." Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006).  In 2010 Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce."  Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

list of potential ADPs that certify that they meet the remaining eligibility criteria. Id. § 1675c(d)(2).

The ITC compiled lists of potential ADPs with respect to the antidumping duty orders on frozen shrimp, which lists it provided to Customs. Am. Compl. ¶ 34. Customs published the lists of potential ADPs for Fiscal Year 2006 on June 1, 2006, id., for Fiscal Year 2007 on May 29, 2007, id. ¶ 35, and for Fiscal Year 2008 on May 30, 2008, id. ¶ 36. Neither Plaintiff appeared on any of these lists. Id. ¶¶ 34-36. Nevertheless, each Plaintiff certified to Customs its eligibility for CDSOA distributions for each of the fiscal years. Id. ¶ 37. Citing Plaintiffs' absence from the list of potential ADPs, Customs denied each Plaintiff's Fiscal Year 2006 certifications on November 17, 2006, stating that funds would be distributed to each Plaintiff "but for the fact that its name does not appear on the ITC list of eligible affected domestic producers and there is pending litigation to determine who is eligible." Id. ¶ 39. Customs later denied each Plaintiff distributions for the 2007 and 2008 Fiscal Years, stating each year that it was not distributing funds to Plaintiffs because "Tampa Bay and Singleton were not on the ITC's list of eligible affected producers." Id. ¶¶ 40-41. Tampa Bay and Singleton also filed letters with the ITC in November 2008 requesting placement on the list of potential ADPs. Id. ¶ 38. The ITC did not respond to these requests.

Plaintiffs challenge the validity and constitutionality of the Commission's and Customs' application of the CDSOA to Tampa Bay and Singleton. In Count 1 of the First Amended Complaint, Plaintiffs claim that the ITC's determinations not to include Tampa Bay and Singleton on the list of potential ADPs were inconsistent with the

CDSOA, not supported by substantial evidence, and otherwise not in accordance with law. Am. Compl. ¶ 43. In Count 2, Plaintiffs challenge on First Amendment grounds the requirement in the CDSOA that, to qualify as ADPs, domestic producers who were not petitioners must have expressed support for a petition ("petition support requirement"), both facially and as applied to Tampa Bay and Singleton. Id. ¶¶ 45-46. In Count 3, Plaintiffs challenge the petition support requirement, both facially and as applied to Tampa Bay and Singleton, on Fifth Amendment equal protection grounds. Id. ¶¶ 48-49.

In Count 4, Plaintiffs challenge the petition support requirement as impermissibly retroactive in violation of the Fifth Amendment due process guarantee because Defendants based eligibility for ADP status, and thus eligibility for disbursements, on past conduct. Id. ¶ 51.

Finally, in Count 5, Plaintiffs claim that they satisfied the petition support requirement by paying $22,000 to the petitioners, prior to the filing of the petition, to assist the petitioners with legal fees necessary for preparing the petition for filing and for participating in the antidumping duty investigation. Am. Compl. ¶ 53. Plaintiffs claim that the payment of these monies "is vastly more demonstrative of support of the petition than the mere checking of a box in a questionnaire issued by the U.S. International Trade Commission." Id.

### A.  Plaintiffs' Statutory Challenges to the Actions of the Two Agencies Must be Dismissed

In Counts 1 and 5 in the Amended Complaint, Plaintiffs raise claims challenging on statutory grounds the actions of the ITC and Customs by which they were denied CDSOA distributions for Fiscal Years 2006 through 2008. Tampa Bay and Singleton

challenge the ITC's excluding them from the list of potential ADPs, and they also

challenge Customs' denying them those distributions.  Am. Compl. ¶¶ 42-43 (Count 1);

¶¶ 52-53 (Count 5).

### 1. Plaintiffs are Untimely in Contesting Their Exclusion from the ITC's List of Potential Affected Domestic Producers for Fiscal Year 2006

We conclude that the claims challenging the ITC's exclusion of each Plaintiff from

the list of potential ADPs for Fiscal Year 2006, as stated in Counts 1 and 5 of the

Amended Complaint, are untimely.[4]  These claims accrued on June 1, 2006, more than

two years prior to the commencement of this action on November 14, 2008.  See

28 U.S.C. § 2636(i) (2006) (Claims under 28 U.S.C. § 1581(i) are "barred unless

commenced in accordance with the rules of the court within two years after the cause of

action first accrues."); Compl. ¶ 16.   We conclude, further, that Plaintiffs' claim

challenging Customs' denial to Plaintiffs of CDSOA distributions for Fiscal Year 2006 is

not barred by the statute of limitations.

Plaintiffs' statutory claims arose under the Administrative Procedure Act ("APA"),

5 U.S.C. § 706 (2006).  See 28 U.S.C. § 2640(e) (2006) (stating that, when exercising

jurisdiction pursuant to 28 U.S.C. § 1581(i), "the Court of International Trade shall

review the matter as provided in section 706 of title 5.").  APA claims can be filed upon

notice of a final agency determination that adversely affects a plaintiff.  5 U.S.C.

§§ 702, 704.   On June 1, 2006, Plaintiffs were placed on notice of Customs' final

---

[4] The court addresses the statute of limitations even though neither Defendant raised the issue of timeliness.  The two-year limit on claims brought under 28 U.S.C. § 2636(i) is jurisdictional.  Pat Huval Restaurant & Oyster Bar, Inc. v. U.S. Int'l Trade Comm'n, 36 CIT ___, Slip Op. 12-27 at 14-15 (Mar. 1, 2012).

determination when Customs published notice of intent to make CDSOA distributions

for Fiscal Year 2006, which included the list of potential ADPs prepared by the ITC.

Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers,

71 Fed. Reg. 31,336 (June 1, 2006) ("Fiscal Year 2006 Notice of Intent").  On that date,

Plaintiffs were placed on notice that a Fiscal Year 2006 CDSOA distribution would be

made for the antidumping duty order on frozen shrimp.  Each Plaintiff also was placed

on notice, by its exclusion from the list prepared by the ITC of potential ADPs, of the

ITC's final determination that it was ineligible to receive that distribution.  Am. Compl.

¶ 34; 19 U.S.C. § 1675c(d)(2) (requiring Customs to base the published list of ADPs

potentially eligible for the distribution "on the list obtained from the Commission . . . .").

Plaintiffs thus could have challenged the ITC's exclusion of them from the list, i.e., the

application to them of the petition support requirement, as of June 1, 2006.  See SKF,

556 F.3d at 1348-49 (stating that claims accrue when an action can be commenced).

Having first accrued on that date, each Plaintiff's cause of action challenging the ITC's

denial of potential ADP status for Fiscal Year 2006 on statutory grounds is time-barred.

Each Plaintiff's statutory claim against Customs for denial of Fiscal Year 2006

benefits is not barred by the statute of limitations because those claims accrued on

November 17, 2006, less than two years prior to Plaintiffs' commencement of this action

on November 14, 2008.  On November 17, 2006, Customs responded to Plaintiffs'

certifications of eligibility for Fiscal Year 2006 CDSOA distributions, stating that funds

would be distributed to each Plaintiff "but for the fact that its name does not appear on

the ITC list of eligible affected domestic producers and there is pending litigation to

determine who [is] eligible."  Am. Compl. ¶ 39.  This notice constitutes a final decision

by Customs subject to challenge under the APA in that it notified Plaintiffs of Customs'

declining to provide them a CDSOA distribution.  Because the claims against Customs

for Fiscal Year 2006, and the other statutory claims in this action, are timely, we reach

the merits and, for the reasons discussed below, dismiss for failure to state a claim on

which relief can be granted.

### 2. Count 1 Fails to State Facts Sufficient to Qualify Either Plaintiff for Distributions under the CDSOA

In Count 1, each Plaintiff challenges as unlawful under the CDSOA the ITC's

determination not to place it on the list of potential ADPs and the failure of Customs to

provide it distributions.  Id. ¶¶ 42-43.  Plaintiffs claim that both of these agency actions

"were inconsistent with the CDSOA, were not supported by substantial evidence, and

were otherwise not in accordance with law."  Id. ¶ 43.

Plaintiffs state that the ITC "has never included Tampa Bay et al. in its list of

eligible ADPs."  Id. ¶ 30.  However, we do not find within the complaint alleged facts that

would have qualified either Plaintiff for inclusion on the ITC's list.  According to the

CDSOA, the ITC is to prepare "a list of petitioners and persons with respect to each

order and finding and a list of persons that indicate support of the petition by letter or

through questionnaire response."  19 U.S.C. § 1675c(d)(1).  In the Amended Complaint,

Plaintiffs identify the petitioners on the relevant frozen shrimp antidumping duty orders

as parties other than themselves.  Am. Compl. ¶ 24.  Therefore, neither Plaintiff qualifies

for inclusion as "petitioners and persons with respect to each order . . . ."  19 U.S.C.

§ 1675c(d); see id. § 1675c(b)(1)(A) (including within the definition of an ADP "a

petitioner . . . with respect to which an antidumping duty order . . has been entered").

The Amended Complaint also fails to allege facts by which either Tampa Bay or Singleton otherwise could qualify as a potential ADP with respect to the orders on frozen shrimp: missing is an allegation that Plaintiffs are "persons who indicate support of the petition by letter or through questionnaire response." Id. § 1675c(d)(1).

In summary, the Amended Complaint fails to allege facts from which we could find that the ITC erred in omitting Tampa Bay or Singleton from any list prepared under § 1675c(d)(1). For this reason, we must also dismiss the statutory claims Plaintiffs bring against Customs. We do not find within the Amended Complaint facts by which we could conclude that Customs lawfully could have made distributions to either Plaintiff. See id. § 1675c(d)(2) (requiring Customs to base its "list of affected domestic producers potentially eligible for the distribution . . . on the list obtained from the Commission under paragraph (1)"). We conclude, therefore, that the remaining claims in Count 1 must be dismissed for failure to state a claim on which relief can be granted.

### 3. Count 5 Does Not State Facts Allowing the Court to Conclude that Either Plaintiff Satisfied the Petition Support Requirement

Count 5 states that "Plaintiffs argue that they supported the petition." Am. Compl. ¶ 53. Count 5 alleges that Plaintiffs, "at the request of the purported petitioners, paid said petitioners $22,000 prior to the filing of the petition, to assist them in paying their attorneys to prepare the petition and participate in the ensuing antidumping investigation." Id. To qualify as an ADP, a party must "indicate support for a petition by letter or through questionnaire response." 19 U.S.C. § 1675c(d)(1). A domestic producer who, for whatever purpose, pays money to parties who intend in the future to file an antidumping duty petition does not thereby satisfy this requirement. At the time

the alleged payments were made, no petition existed, and the party who allegedly received the payments was not yet a petitioner nor petitioners' counsel.  Moreover, Plaintiffs do not allege that what they characterize as support for a petition was expressed to the Government.  Plaintiffs argue in Count 5 that "[a]ctual payment of money is vastly more demonstrative of support of the petition than the mere checking of a box in a questionnaire issued by the U.S. International Trade Commission."  Am. Compl. ¶ 53. This argument is unavailing.  Plaintiffs' allegations regarding the $22,000 payment establish no more than that Plaintiffs lent their "support" to parties who intended in the future to become petitioners.  That is not the same as indicating support for a petition in the manner the statute requires, i.e., by letter or through questionnaire response.

In support of Count 5 (and the related Count 1, as well), Plaintiffs contend that the ITC is not limited to the record of the original investigation or the data found in responses to domestic industry questionnaires, in determining whether a domestic interested party supported a petition. Pls.' Opp'n at 8.  Plaintiffs maintain that the ITC is required to consult with Commerce on the identification of the parties that should be included on the list of potential ADPs, arguing that the CDSOA requires, under certain circumstances, that "the Commission shall consult with the administering authority to determine the identity of the petitioner and those domestic parties who have entered appearances during administrative reviews conducted by the administering authority under section 1675 of this title."  Id. (citing 19 U.S.C. § 1675c(d)(1)).  This argument fails because this consultation requirement only applies in certain circumstances not present here: "In those cases in which a determination of injury was not required or the

Commission's records do not permit an identification of those in support of a petition . . . . "  19 U.S.C. § 1675c(d)(1).  An injury determination was required here.  See id. § 1673d(c)(3).  Moreover, each Plaintiff admits that in completing the ITC's questionnaire it did not express support for the petition, an admission that refutes any contention that the Commission's records did not permit an identification of those that supported the petition by letter or questionnaire response.

Plaintiffs also cite the legislative history of the CDSOA, arguing that the Commission's interpretation of the statute frustrates Congress' intent to "reward companies like Tampa Bay that do invest and create jobs in a troubled United States industry that has been injured by dumped imports."  Pls.' Opp'n at 9 (citing Pub. L. 106-387, § 1(a) [Title X, § 1002], Oct. 28, 2000, 114 Stat. 1549, 1549A–72).  Plaintiffs' reliance on the legislative history is also unavailing.  Where, as here, the plain meaning of a statute is clear, we need not speculate further on legislative intent.  The CDSOA directs the Commission to provide to Customs "a list of persons that indicate support of the petition by letter or through questionnaire response."  19 U.S.C. § 1675c(d)(1) (emphasis added).  Plaintiffs concede that they did not expressly indicate support of the petition in their questionnaire response during the ITC's investigation, and they have not alleged that they supported the petition through letter.  See Am. Compl. ¶ 53; see also Pls.' Show Cause Brief at 2, ECF No. 20.  We conclude, therefore, that the remaining claims in Count 5 must be dismissed for failure to state a claim on which relief can be granted.

### B.  Plaintiffs' Constitutional Challenges Must be Dismissed

In Counts 2 and 3, Plaintiffs bring facial and as-applied challenges to the petition support requirement of the CDSOA under the First Amendment and Fifth Amendment equal protection guarantee.  Am. Compl. ¶¶ 45-49.  In Count 4, Plaintiffs challenge the petition support requirement as impermissibly retroactive under the Fifth Amendment due process guarantee.  Id. ¶ 51.  We conclude that the claims pertaining to Fiscal Year 2006 must be dismissed as time barred and that, as to the later Fiscal Years, the First Amendment and equal protection claims must be dismissed as foreclosed by binding precedent.  The retroactivity claims must be dismissed for lack of standing.

### 1.  Plaintiffs' Claims Challenging the Petition Support Requirement with Respect to the Fiscal Year 2006 Distribution Are Time Barred

Plaintiffs' constitutional challenges to the petition support requirement with respect to the Fiscal Year 2006 distribution accrued on June 1, 2006, the date Customs published the notice of intent setting forth the list of potential ADPs for the frozen shrimp antidumping duty order.  Am Compl. ¶ 34; Fiscal Year 2006 Notice of Intent, 71 Fed. Reg. at 31,336.  The ITC's omission of Plaintiffs from these lists constituted a final determination that neither Plaintiff had met the petition support requirement.  19 U.S.C. § 1675c(d)(1) (describing "a list of petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire response.").  Because Plaintiffs did not commence this action until November 14, 2008, more than two years after accrual, these claims are time barred.

No constitutional claims accrued on November 17, 2006 as a result of the letter from Customs informing Plaintiffs that funds would be distributed to each Plaintiff "but

for the fact that its name does not appear on the ITC list of eligible affected domestic producers and there is pending litigation to determine who is eligible." Am. Compl. ¶ 39. As discussed above, Plaintiffs' Fiscal Year 2006 statutory claims against Customs accrued on November 17, 2006, the date of Customs' letter. None of Plaintiffs' constitutional claims challenging the petition support requirement could have accrued on that date, however, because Customs did not apply the petition support requirement to Plaintiffs and had no authority to do so. 19 U.S.C. § 1675c(d)(2) ("the list of affected domestic producers potentially eligible for the distribution based on the list obtained from the Commission . . . .").

### 2.  Plaintiffs' First Amendment and Equal Protection Facial Challenges to the Petition Support Requirement are Foreclosed by Binding Precedent

In Count 2, Plaintiffs claim that the petition support requirement of the CDSOA violates the First Amendment on its face because it compels speech. Am. Compl. ¶ 45. Plaintiffs further claim that the CDSOA engages in impermissible viewpoint discrimination by conditioning receipt of a government benefit on a private speaker's expressing a specific viewpoint, i.e., expression of support for an antidumping petition, and is therefore an unconstitutional restriction on speech. Id. ¶ 46.

In Count 3, Plaintiffs raise a facial challenge to the CDSOA, claiming that the petition support requirement violates the equal protection guarantee of the Fifth Amendment. Id. ¶¶ 48-49. Plaintiffs claim that the CDSOA creates a classification infringing on Tampa Bay's and Singleton's fundamental right to free speech that is not narrowly tailored to a compelling government objective. Id. ¶ 48. They also contend

that the CDSOA impermissibly discriminates between Plaintiffs and other domestic producers who expressed support for the petition. Id. ¶ 49.

The Court of Appeals rejected analogous claims challenging the petition support requirement in SKF, in which it upheld the petition support requirement under the First Amendment and under the Fifth Amendment's equal protection guarantee. SKF, 556 F.3d at 1360 (stating that the "Byrd Amendment is within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly broad."); id. at 1360 n.38 ("For the same reason, the Byrd Amendment does not fail the equal protection review applicable to statutes that disadvantage protected speech."); id. at 1360 ("Because it serves a substantial government interest, the Byrd Amendment is also clearly not violative of equal protection under the rational basis standard."). Plaintiffs' facial constitutional challenges to the CDSOA, therefore, are foreclosed by the holding in SKF, and these challenges must be dismissed for failure to state a claim on which relief can be granted.

Plaintiffs argue that SKF is no longer good law because the decision of the Court of Appeals in SKF to uphold the petition support requirement using an intermediate level of scrutiny, the "Central Hudson" test, was implicitly overturned by a recent decision of the U.S. Supreme Court, Snyder v. Phelps, 131 S. Ct. 1207 (2011). Pls.' Opp'n at 15 (citing Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 564 (1980)). Plaintiffs construe Snyder to hold that all speech on matters of public concern "is entitled to maximum First Amendment protection" and view responses to the ITC's questionnaires as speech on a matter of public concern. Id. Snyder does not support a conclusion that SKF incorrectly applied only an intermediate level of First

Amendment scrutiny. Snyder set aside as contrary to the First Amendment a jury verdict imposing substantial state law tort liability on persons who picketed at a military funeral. Snyder, 131 S. Ct. at 1213-14, 20. The case does not hold that all speech addressing matters of public concern, such as a position taken in antidumping litigation, must receive a level of judicial scrutiny higher than that applied in SKF. See Standard Furniture Mfg. Co. v. United States, 36 CIT __, __, Slip Op. 12-21 at 16-17 (2012) (finding that Snyder did not compel a First Amendment analysis differing from that which was applied in SKF).

### 3. Plaintiffs' Remaining First Amendment As-Applied Challenges Must be Dismissed

In Count 2, Plaintiffs also assert an as-applied constitutional challenge under the First Amendment, claiming specifically that the CDSOA discriminates against those, such as Tampa Bay and Singleton, who did not express a specific viewpoint (support for the antidumping petition), and is, therefore, an unconstitutional restriction on speech. Am. Compl. ¶ 45-46. Plaintiffs argue that the holding in SKF that the petition support requirement did not violate the First Amendment is confined to situations in which parties actively opposed the petition and that SKF held that the ITC may consider only a party's actions, and not a party's expressed viewpoints, in determining whether a party supported the petition. Pls.' Opp'n at 13-14. They argue that the ITC's application of the CDSOA therefore violated the First Amendment to the extent the ITC based its determination that Plaintiffs did not qualify as potential ADPs on Plaintiffs' failing to indicate support of the petition by letter or questionnaire response. Id. at 14-15.

Plaintiffs' argument misinterprets <u>SKF</u>, which does not hold that the CDSOA would violate the First Amendment if applied to deny CDSOA benefits based solely on a party's failing to indicate support for the petition by letter or questionnaire response. <u>SKF</u> holds the opposite.  The Court of Appeals determined that the appropriate First Amendment legal standard was the standard applying to regulation of commercial speech.  It then concluded that the CDSOA, although requiring a non-petitioner, such as SKF, to express support for the petition in order to acquire ADP status, met that standard.  <u>SKF</u>, 556 F.3d at 1354-55.  The Court of Appeals did state, as Plaintiffs highlight, that "[t]he language of the Byrd Amendment is easily susceptible to a construction that rewards actions (litigation support) rather than the expression of particular views" and that "a limiting construction of the statute is necessary to cabin its scope so that it does not reward a mere abstract expression of support."  <u>Id.</u> at 1353; Pls.' Opp'n at 14.  However, those statements were in the context of discussing statutory language as an alternative to previous discussion in the opinion on congressional purpose.  They were part of the analysis by which the Court of Appeals subjected the CDSOA to First Amendment standards for the regulation of commercial speech.  They do not signify a holding that the First Amendment prohibits a government agency implementing the CDSOA from conditioning ADP status on the expression of support for a petition.  See <u>Furniture Brands</u>, 35 CIT at __, 807 F. Supp. 2d at 1311-12 (rejecting the argument that <u>SKF</u> modified the meaning of the petition support requirement).

Plaintiffs also argue that, on these facts, Defendants applied the petition support requirement in a way that was overly broad, thereby violating the First Amendment

according to the test applied by the Court of Appeals in SKF, the Central Hudson test. Pls.' Opp'n at 12-13 (citing SKF, 556 F.3d at 1357).  Positing SKF to hold that "domestic producers who are not petitioners but nevertheless respond to Commission questionnaires have done enough to be regarded as supporting the petition," Plaintiffs argue that denying them CDSOA distributions served no governmental interest.  Id. at 13.  This argument is misguided.  The Court of Appeals concluded in SKF that the CDSOA's providing benefits only to those who supported the petition, and not those who opposed or took no position on the petition, served a substantial governmental interest, directly advanced that interest, and was not more extensive than necessary in advancing that interest.  SKF, 556 F.3d at 1355-59.

For the aforementioned reasons, Plaintiffs' as-applied First Amendment challenges are foreclosed by the holding in SKF.  Plaintiffs have failed to allege any unique facts that would distinguish these claims from the binding precedent established by that holding, and, therefore, Tampa Bay and Singleton's First Amendment as-applied challenges must be dismissed.

### 4.  Plaintiffs' Remaining Fifth Amendment Equal Protection As-Applied Challenges Must Be Dismissed

In Count 3, Plaintiffs claim that the CDSOA impermissibly discriminates between Plaintiffs and other domestic producers who expressed support for the underlying antidumping petition in that the petition support requirement, as applied to Tampa Bay and Singleton, was not rationally related to a legitimate governmental purpose and thereby contravened the equal protection guarantee of the Fifth Amendment.  Am. Compl. ¶ 49.  See also Pls.' Opp'n at 15.

Plaintiffs have alleged no facts that distinguish their equal protection claims from the equal protection claim addressed, and rejected, in <u>SKF</u>. The Court of Appeals held that the petition support requirement of the CDSOA does not abridge the equal protection guarantee, holding that the petition support requirement is rationally related to the Government's legitimate purpose of rewarding parties who promote the Government's policy against dumping. <u>SKF</u>, 556 F.3d at 1360. <u>SKF</u> reasoned that it was "rational for Congress to conclude that those who did not support the petition should not be rewarded." <u>Id.</u> at 1359. For these reasons, relief cannot be granted on Plaintiffs' as-applied equal protection claims, which must be dismissed.

### 5. **Plaintiffs' Retroactivity Claims Must Be Dismissed for Lack of Standing**

Plaintiffs claim in Count 4 that the petition support requirement is impermissibly retroactive in violation of the Fifth Amendment due process guarantee because Defendants based eligibility for ADP status, and thus eligibility for disbursements, on past conduct. Am. Compl. ¶ 51.

Each Plaintiff completed its response to the ITC questionnaire, in which it did not express support for the petition on frozen and canned shrimp, after the 2000 enactment of the CDSOA. They lack standing to bring their due process retroactivity claims because the CDSOA was not applied retroactively to either of them. <u>See</u> <u>Ashley Furniture Indus., Inc. v. United States</u>, 36 CIT __, __, Slip Op. 12-14 at 28 (2012). Plaintiffs have conceded dismissal of the claims stated in Count 4. Pls.' Opp'n at 17. We will dismiss these claims according to USCIT Rule 12(b)(1).

## IV. Conclusion

Plaintiffs' statutory claims against the ITC seeking CDSOA benefits for Fiscal Year 2006, as stated in Counts 1 and 5 of the Amended Complaint, must be dismissed as untimely.   The remaining claims in Counts 1 and 5 must be dismissed because Plaintiffs fail to state facts sufficient to qualify either Plaintiff for distributions under the CDSOA.  Plaintiffs' constitutional claims for Fiscal Year 2006 also must be dismissed as untimely.  Plaintiffs' First Amendment and equal protection claims for distributions in the later fiscal years are foreclosed by binding precedent, and Plaintiffs' retroactivity claims must be dismissed for lack of standing.   Plaintiffs already have availed themselves of the opportunity to amend their complaint and have not indicated that they desire to seek leave to amend their complaint further.   Therefore, we conclude that it is appropriate to enter judgment dismissing this action.

                                                    /s/ Leo M. Gordon
                                                   Judge Leo M. Gordon

Dated: March 20, 2012
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TAMPA BAY FISHERIES INC. and<br>SINGLETON FISHERIES, INC.,<br><br>                Plaintiffs,<br><br>     v.<br><br>UNITED STATES,<br><br>             Defendant. | Before: Gregory W. Carman, Judge<br>        Timothy C. Stanceu, Judge<br>        Leo M. Gordon, Judge<br><br>Court No. 08-00404 |

## JUDGMENT

Upon consideration of the First Amended Complaint, the motions to dismiss for failure to state a claim upon which relief can be granted filed by Defendants U.S. International Trade Commission ("ITC") and U.S. Customs and Border Protection, all other papers and proceedings had in this action, and in conformity with the court's Opinion issued on this date, it is hereby

**ORDERED** that Defendants' motions to dismiss are granted; it is further

**ORDERED** that Plaintiffs' statutory claims challenging the exclusion of each Plaintiff from the ITC's list of potential affected domestic producers for Fiscal Year 2006 and Plaintiffs' constitutional claims directed to the petition support requirement of the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA") with respect to Fiscal Year 2006 are barred by the statute of limitations in 28 U.S.C. § 2631(i) and are dismissed pursuant to USCIT Rule 12(b)(1); it is further

**ORDERED** that Plaintiffs' claims challenging the petition support requirement of the CDSOA as impermissibly retroactive in violation of the Fifth Amendment due

Court No. 08-00404                                                    Page 2

process guarantee are barred by a lack of standing and are dismissed pursuant to USCIT Rule 12(b)(1); it is further

     **ORDERED** that all other claims in this action are dismissed for failure to state a claim upon which relief can be granted pursuant to USCIT Rule 12(b)(5); and it is further

     **ORDERED** that this action is dismissed.


                                 /s/ Leo M. Gordon
                               Judge Leo M. Gordon

Dated: March 20, 2012
      New York, New York